### REITER v. BIERSTEIN et al.

### In re ROYAL BOX & LUMBER CO.

(District Court, E. D. New York. October 20, 1922.)

1. Bankruptcy ⬳302(4)—Ground of invalidity of mortgage not pleaded cannot be considered.

In an action by a trustee in bankruptcy to have set aside a chattel mortgage given by a bankrupt to his codefendant, complainant's contention that the mortgage was null and void for failure to comply with section 230 of the Lien Law of the state of New York, could not be considered, where not set forth in the bill of complaint and not litigated.

2. Bankruptcy ⬳303(3)—Evidence held to require finding that mortgage was executed by bankrupt when insolvent.

In an action by trustee in bankruptcy to have set aside a chattel mortgage given by the bankrupt, evidence *held* to require a finding that the bankrupt was hopelessly insolvent when the mortgage was executed and that the mortgagee knew of such insolvency.

3. Corporations ⬳477(1)—Mortgage executed after dismissal of bankruptcy proceedings for money previously loaned held security for existing indebtedness.

A chattel mortgage executed after dismissal of bankruptcy proceedings for money loaned by the mortgagee to the bankrupt to enable the latter to make a composition with creditors was given for an existing indebtedness as the mortgagor corporation retained its corporate entity notwithstanding its bankruptcy.

In Equity. Action by Harry S. Reiter, as trustee in bankruptcy of the Royal Box & Lumber Company, against Abraham Bierstein and the Royal Box & Lumber Company to set aside a chattel mortgage given by the bankrupt. Decree for complainant.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Charles Soble, of New York City, for complainant.
Sobel & Brand, of New York City, for defendants.

GARVIN, District Judge. This is an action brought by the plaintiff as trustee in bankruptcy of the Royal Box & Lumber Company to set aside a chattel mortgage given by the bankrupt to the defendant Bierstein. Two questions are involved:

(1) Was the mortgage given under such circumstances as justify a finding that it was given with intent to prefer the mortgagee?

(2) Was the mortgage given under such circumstances as to require the court to hold that it was given for an existing indebtedness by reason of the fact that it was not actually executed and delivered for several days after the loan for which it was given was made, the delay being occasioned because the mortgagor was at that time in bankruptcy and was effecting a composition with its creditors?

The money advanced was used to carry out the composition agreement and until the proceeding was dismissed the bankrupt, a corporation could not execute the mortgage.

[1] The complainant, also contends that the mortgage must be declared null and void because of failure to comply with the laws of the state of New York (section 230 of the Lien Law, as amended by Laws 1911, c. 326, and Laws 1916, c. 348), but that claim cannot be considered as it was not set forth in the bill and was not litigated. On June 28, 1921, a petition in involuntary bankruptcy was filed against the defendant company. Some time prior thereto, in December, 1920, a petition in bankruptcy had been filed against said company, which was later dismissed as a result of a composition. This composition was made possible, according to defendants' contention by reason of various loans by defendant Bierstein to the defendant company, aggregating $5,700. The mortgage was executed and delivered March 21. 1921, after the loans were made, but was not recorded until June 7, 1921.

Proceeding then to consider whether the mortgage was given with intent to create a preference, the Bankruptcy Act provides (section 60 [Comp. St. § 9644]):

"a. A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required.

"b. If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or

his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference it shall be voidable by the trustee and he may recover the property or its value from such person. And for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

[2] It is quite clear that the defendant company was insolvent when the mortgage was executed. The testimony of its president (a second cousin of the defendant mortgagee) that its assets were then about $25,-000 or $30,000 and the liabilities about $18,000 or $19,000 is rejected as being wholly unworthy of belief, in view of the fact that three months later the assets were sufficient to pay hardly more than 10 per cent. of its liabilities. No real explanation of this discrepancy is offered. It may be that a large amount of the assets were disposed of in a fraudulent manner, but that does not appear, and the only conclusion is that the testimony in question is false, and that the company was hopelessly insolvent at the time of the execution of the mortgage. It is conceded that the mortgage was given within four months before the filing of the petition. The testimony of the defendant mortgagee satisfies the court that he knew of the insolvency. Related to the president of the bankrupt, advancing such a comparatively large sum (it is clear that he is not wealthy), with no record whatever of the various transactions, and taking no evidence of indebtedness, the court cannot escape the conclusion that he was fully aware of the insolvency, even if he actually loaned the money, a fact of which, it may be stated, the court is in grave doubt.

[3] Proceeding to consider the second question, it is apparent that while there was no present consideration when the mortgage was given, the loans were to the bankrupt company. It still retained its corporate entity and could borrow money, being in bankruptcy, just as an individual, if it could persuade any one to make a loan, and when it resumed business with the composition effected and the petition dismissed, it owed Bierstein whatever, if anything, the latter had advanced.

This whole transaction bears every earmark of being an attempt by gross fraud to divert assets which should be distributed among the bona fide creditors of the bankrupt.

There will be a decree for complainant.